UNITED STATES of America,
Plaintiff–Appellee,

v.

Dennis L. WENGER, Defendant–
Appellant.

No. 93–4043.

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1995.

Decided June 15, 1995.

Patrick Hansen, Asst. U.S. Atty., Sharon Jefferson (argued), Dyer, IN, Barbara Z. Brook, Asst. U.S. Atty., South Bend, IN, for plaintiff-appellee.

Jerry B. Kurz (argued), Kathryn Hall, Hall & Kurz, Chicago, IL, for defendant-appellant.

Before CUMMINGS, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Part of the agreement by which Dennis Wenger pleaded guilty to receiving child pornography, 18 U.S.C. § 2252(a)(2), provides:

> Understanding that § 3742 of Title 18 of the United States Code provides for appeal by a defendant of a sentence under certain circumstances and that he may give up or waive said right to appeal, I expressly waive any and all rights conferred by Title 18, U.S.C. § 3742 to appeal my sentence. I also expressly waive the right to appeal my sentence on any other ground and waive the right to attack my sentence in any post-conviction proceeding.

The district court accepted Wenger's plea of guilty and sentenced him to 54 months' imprisonment, departing upward from the presumptive range of 18–24 months determined under the Sentencing Guidelines. Wenger had been arrested and charged in state court with molesting an 8-year-old girl. The presentence report relayed statements that Wenger had molested the girl's twin brother too. These events, coupled with Wenger's conviction in 1982 for child molestation, led the judge to conclude that a longer sentence is appropriate. See U.S.S.G. § 2G2.2 Application Note 5, specifying that an upward departure is warranted "[i]f the defendant sexually abused a minor at any time, whether or not the sexual abuse occurred in the course of the [pornography] offense".

██ Wenger has appealed, despite his promise not to do so. Waivers of appeal are enforceable. *United States v. Schmidt,* 47 F.3d 188 (7th Cir.1995). Wenger asks us to establish a procedural citadel around the right of appeal, so that waiver will be accepted only following elaborate warnings after the fashion of those used for the most vital constitutional rights. See *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (sixth amendment right to counsel); Fed.R.Crim.P. 11(c). But other rights may be surrendered without warnings of any kind and with considerably less formality. E.g., *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (fourth amendment right to privacy); *United States v. Mezzanatto,* — U.S. —, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995) (right

to exclude from evidence proffer made as part of plea negotiations). The right to appeal is in the latter category—not simply because it depends on a statute rather than the Constitution but because it has long been seen as the kind of right that depends on assertion. A litigant who does not take a timely appeal has forfeited any entitlement to appellate review. Our legal system makes no appeal the default position. A defendant who finds this agreeable need do nothing. All the waiver in a plea agreement does is to make that outcome a part of the parties' bargain, so that a defendant inclined against appeal or willing to forgo it—perhaps to put an unpleasant episode behind him more quickly—may obtain a concession from the prosecutor. In this case the prosecutor agreed to support a downward departure for acceptance of responsibility, a boon that usually would be unavailable to a defendant arrested (as Wenger was) for an intervening offense.

Empty promises are worthless promises; if defendants could retract their waivers (the practical effect, if the procedural hurdles to an effective waiver were set too high) then they could not obtain concessions by promising not to appeal. Although any given defendant would like to obtain the concession and exercise the right as well, prosecutors cannot be fooled in the long run. Right holders are better off if they can choose between exercising the right and exchanging that right for something they value more highly. See *Mezzanatto*, — U.S. at —, 115 S.Ct. at 805. Wenger exchanged the right to appeal for prosecutorial concessions; he cannot have his cake and eat it too.

■ The waiver in this plea agreement is as express as they come. Wenger does not say that his lawyer slipped the language into the agreement without telling him. He does not claim to be illiterate. Seven months before trial the judge ordered him committed for an investigation of his mental competence; he was found fit for trial, and this means that he was entitled to participate fully, possessing among his rights the right to waive still other rights. *Godinez v. Moran*, — U.S. —, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). Wenger believes that

the district court should have included the waiver of appeal in the Rule 11 colloquy, but the list in Rule 11(c) is not elastic, and warnings about waivers of appeal are not to be found there. Rule 11's value is as a formulary.

■ Most waivers are effective when set out in writing and signed; Rule 11(c) states exceptions to that principle, exceptions that do not aid Wenger. Perhaps one could say that when executing the waiver Wenger did not appreciate that the district judge would depart upward from the guidelines, but if this were sufficient to allow an appeal then waivers would be utterly ineffectual. Defendants who appeal from sentences following plea agreements *always* point to unanticipated and unwelcome developments. If they had anticipated (which is to say, consented to) these developments, they would not be grounds of complaint. Wenger protests not only the upward departure but also what he interprets as the denial of his right of allocution. (The prosecutor reads the same transcript as offering Wenger the opportunity to speak, an option that he declined through counsel rather than personally.) To say that a waiver of appeal is effective if and only if the defendant lacks grounds for appeal is to say that waivers will not be honored.

■ Waivers of appeal must stand or fall with the agreements of which they are a part. If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored. If the agreement is involuntary or otherwise unenforceable, then the defendant is entitled to appeal. Several of the arguments Wenger advances in this court imply that he is unhappy with the plea agreement or the quality of legal assistance that led to it. Wenger's notice of appeal was filed after the 10 days provided by Fed.R.App.P. 4(b). At a hearing to determine whether to extend the time for appeal, Wenger complained to a magistrate judge about the severity of the sentence. In response to his attorney's questions Wenger conceded, among other things, that he had read the plea agreement and understood the waiver of appeal; Wenger told the court that he wanted a lower sentence but did not want to withdraw his plea of guilty. The district

judge extended the time for appeal but declined to relieve Wenger of the waiver, in effect bucking the question to us. At oral argument Wenger's able appellate lawyer disclaimed any interest in vacating the plea and going to trial. Wenger does not want a trial, does not even want to negotiate a new plea agreement. He wants the benefits of the existing agreement but not the principal detriment. That is the one outcome that would be most destructive of the plea agreement process. Defendants must take the bitter with the sweet. It is all or nothing, and Wenger most assuredly does not want to start over and face the prospect of a trial.

 A review of the proceeding at which the district court accepted the plea shows that the judge complied with Rule 11(c). In particular, the judge informed Wenger of the statutory maximum penalty of 10 years' imprisonment. The written plea agreement informed Wenger that the prosecutor had reserved the right to provide the judge with all information that might be pertinent to the sentence. The prosecutor promised to tell the judge "the good things ... and the bad things" about Wenger. He kept that promise; the judge rewarded the good things with a discount for acceptance of responsibility and the bad things with an upward departure. One can imagine improvements to the procedure. The judge might have provided Wenger not only with an estimate of the guideline range but also with an estimate of the probability of departure—though such estimates are risky and potentially misleading when made in advance of the assembly of information in the presentence report. Perhaps the parties could have negotiated a more complex waiver, containing an estimate of the likely sentencing range and a promise by Wenger not to appeal unless the sentence exceeded the upper bound. Yet greater complexity makes the waiver even less understandable to litigants, and therefore may not be an improvement after all. At all events, that we are able to imagine potential changes in the procedures actually used is not a good reason to free Wenger from his bargain; indeed, inventiveness with the aid of hindsight is the principal threat to the stability of plea agreements, and therefore the major hazard to defendants' ability to

obtain concessions for the rights they surrender.

Wenger explicitly waived his right to appeal. He does not ask us to set aside the entire plea agreement. It is inappropriate to take a blue pencil to the agreement, removing the provisions that in retrospect the defendant wishes were not there. The appeal is therefore dismissed.