# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-3514

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GERARDO VILLARREAL-TAMAYO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 CR 266—**Rudolph T. Randa**, *Chief Judge.*

ARGUED SEPTEMBER 12, 2006—DECIDED OCTOBER 30, 2006

Before COFFEY, ROVNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Gerardo Villarreal-Tamayo pleaded guilty to being in the United States without permission after he was deported. *See* 8 U.S.C. § 1326(a). He was sentenced to a term of 48 months because his deportation followed a conviction for an aggravated felony. On appeal he argues that his guilty plea should be over-turned because during the plea colloquy he did not admit, nor did the district court find, that he was previously convicted of an aggravated felony. Because Tamayo[1] didn't first ask the district court to allow him to walk away from

---

[1] We shorten his name for easy reading.

his plea, his burden here is a steep one.

Tamayo, a Mexican citizen who was deported from the United States in 2000, was arrested in 2004 in Milwaukee, Wisconsin, for receiving stolen property and obstructing a police officer. Upon confirming his identity, the government charged him under § 1326(a); included in the indictment was an allegation that in 1996, and before he was deported, he was convicted of possession with intent to distribute methamphetamine, an aggravated felony.

During the course of the proceedings, Tamayo, while represented by counsel, appeared before the district court (Chief Judge Rudolph T. Randa) and expressed a desire to forego a written plea agreement and "plead guilty on an open plea[2]." The judge advised Tamayo of the rights he was waiving by pleading guilty and informed him of the elements of the offense the government had to prove if the case went to trial, namely: (1) that he is not a citizen of the United States; (2) that he was deported from the United States; (3) that he was found in the United States despite his deportation; and (4) that he did not have the consent of the Attorney General to reenter the United States. When asked if he understood that the government would not have to prove these elements if he pleaded guilty, Tamayo replied that he "would like to do an open plea," and went on to state:

> With all respect, your Honorable Judge, I know that I am in front of a court of justice and I am in front of you to do an open plea. I am pleading guilty to having entered in the United States illegally, without the consent of the Government. And that's it. . . . I know that you would be sentencing me. That's what the Constitution states. And I trust the justice of this

---

[2] An interpreter was also present to assist Tamayo at the hearing.

country.

In an offer of proof, the attorney for the government said, if the case were to go to trial, the evidence would prove that: (1) in 1996, Tamayo was convicted of "the felony offense of possession with intent to distribute more than 1 kilogram of methamphetamine"; (2) in 2000, he was ordered removed from the United States and deported to Mexico; (3) in 2004, he was arrested in Milwaukee, Wisconsin; and (4) his immigration file contained no evidence of a consent to reenter from the Attorney General. Judge Randa concluded, quite naturally, that if those facts were shown at trial, the government would successfully establish "the four parts or elements of this offense that the Court discussed with the Defendant earlier." The judge then asked Tamayo if he still wished to "enter a plea of guilty to this charge in the Indictment." Tamayo responded: "For having entered into this county illegally, I do declare myself guilty." The judge accepted Tamayo's plea, saying that he was "fully satisfied" that it was "knowing, voluntary, intelligent, and free."

Prior to sentencing the probation officer submitted a report which relied, in part, on Tamayo's 1996 felony drug conviction to determine that his total offense level was 21 and that his Criminal History Category was III. These calculations resulted in a recommended imprisonment range of 46 to 57 months. In response, Tamayo filed a *pro se* objection, arguing that the reference to his 1996 methamphetamine conviction was unconstitutional because it "was neither charged in the indictment, proven to the jury, or admitted by the Defendant." At the sentencing hearing, however, Tamayo's attorney neither objected to the inclusion of the methamphetamine conviction, nor moved to withdraw the guilty plea; the attorney instead stated that "there were no factual errors [in the presentence investigation report] but merely disagreement with the guidelines calculation." Judge Randa, accordingly, overruled Tamayo's

objection and imposed a sentence of 48 months, just a tad above the low-end of the advisory range.

On appeal Tamayo argues that his guilty plea must be set aside because: (1) it was involuntary; and (2) the district court did not find that it was supported by a factual basis. Namely, he asserts that he pleaded guilty "only to illegally entering the country" and, in so doing, did not admit that he had a previous conviction for an aggravated felony. He similarly argues that Judge Randa did not determine if there was a factual basis for his guilty plea because he did not explicitly find that he had a prior conviction for an aggravated felony.

When a defendant challenges his guilty plea on appeal without first having moved to withdraw it in the district court, we review the record only for plain error. *See United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Schuh*, 289 F.3d 968, 974 (7th Cir. 2002); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). The government suggests, however, that in *United States v. Driver*, 242 F.3d 767, 770-71 (7th Cir. 2001), we stated that a defendant waives any appellate challenge to his guilty plea when he fails to move to withdraw it in the district court. This is incorrect; *Vonn* has clearly spoken on that score. That is not to say the government's reading of *Driver* is unappealing. As a practical matter, it is incredibly difficult for a defendant to prove that a district court plainly erred when accepting a guilty plea. *See, e.g.*, *United States v. Parker*, 368 F.3d 963, 967-68 (7th Cir. 2004); *United States v. Blalock*, 321 F.3d 686, 688-89 (7th Cir. 2003); *United States v. Martinez*, 289 F.3d 1023, 1029 (7th Cir. 2002); *United States v. Jeffries*, 265 F.3d 556, 557-58 (7th Cir. 2001); *United States v. Gilliam*, 255 F.3d 428, 433-34 (7th Cir. 2001). It would be far better if defendants first moved to withdraw their guilty pleas in the district court before challenging them on appeal. Where a

defendant claims he did not understand the crime to which he pleaded guilty—as Tamayo does here—the district court would then have the opportunity to determine whether the defendant did, in fact, understand. *See* Fed. R. Crim. P. 11(d)(2)(B); *United States v. Jones*, 381 F.3d 615, 618-19 (7th Cir. 2004) (affirming district court's denial of motion to withdraw guilty plea premised on a claim that defendant did not understand guilty plea). But we are bound by *Vonn*, and because Tamayo did not move to withdraw his guilty plea in the district court, our review is, as we said, only for plain error. And establishing plain error, of course, is excruciatingly difficult.

Getting back to this case, Tamayo argues that Judge Randa did not inform him of the nature of the charge, *see* Fed. R. Crim. P. 11(b)(1)(G), because he did not discuss what Tamayo characterizes as a "specific element" of the offense—that he was previously convicted of an aggravated felony. But Tamayo misunderstands § 1326. He assumes that subsection (b)(2) defines an "element" of the offense when the government seeks an enhanced penalty. This contention has been squarely rejected.

As relevant here, § 1326(a) makes it a crime punishable by a maximum of two years for any alien, previously removed, to reenter or be present in the United States without the express consent of the Attorney General. *See* 8 U.S.C. §§ 1326(a)(1), (2). Section 1326(b)(2) increases the penalty to a maximum of 20 years if the defendant was removed subsequent to a conviction for an aggravated felony. *See id.* § 1326(b)(2). In *United States v. Almendarez-Torres*, 523 U.S. 233 (1998), the Supreme Court held that: (1) section 1326(b)(2) does not define a separate crime, but rather is a penalty provision authorizing an enhanced penalty for violations of § 1326(a), *id.* at 226-27; *see also United States v. Williams*, 410 F.3d 397, 401-02 (7th Cir. 2005) (discussing *Almendarez-Torres*); and (2) the Constitution does not require an enhancement based on recidivism

to be treated as an element of the underlying offense, *Almendarez-Torres*, 523 U.S. at 244-47; *see also United States v. Stevens*, 453 F.3d 963, 967 (7th Cir. 2006) ("'[T]he district court does not violate a defendant's Sixth Amendment right to a jury trial by making findings as to his criminal record that expose him to greater criminal penalties.'" (quoting *Williams*, 410 F.3d at 402)); *United States v. Lechuga-Ponce*, 407 F.3d 895, 896-97 (7th Cir. 2005) (relying on *Almendarez-Torres* to state "the fact of a prior conviction need not be proven beyond a reasonable doubt").

Although it would have been a good thing to do, the judge was under no obligation to inform Tamayo that his 1996 methamphetamine conviction was bound to be an important sentencing factor. Along the same line, the judge was not required, during the plea colloquy, to make an explicit finding that Tamayo previously was convicted of an aggravated felony. *See Williams*, 410 F.3d at 401-02 ("The existence of a prior conviction for an aggravated felony was 'as typical a sentencing factor as one might imagine,' . . . . As such, that factor could be determined by the judge rather than a jury." (quoting *Almendarez-Torres*, 523 U.S. at 230, 243-44)). If the law in this regard is to be changed, it will be the Supreme Court, not us, that will rewrite the rule. *See, e.g.*, *Stevens*, 453 F.3d at 967; *United States v. Sperberg*, 432 F.3d 706, 707 (7th Cir. 2005); *Williams*, 410 F.3d at 402.

For these reasons, the judgment of the district court is AFFIRMED.

No. 05-3514                                                            7

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*